John Starr, Appellant, *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Appellee.

Argued September 13, 1973, before Judges KRAMER, WILKINSON, JR. and ROGERS, sitting as a panel of three.

*Warren W. Bentz,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE KRAMER, October 10, 1973:

This is an appeal filed by John Starr (Starr) from an order of the Unemployment Compensation Board of Review (Board) dated October 11, 1972, denying Starr unemployment compensation benefits.

The record in this case is unduly complicated by the confusing and recanting testimony of the claimant. It is further compounded by vague descriptions of a parent-subsidiary corporate structure, which in turn is made even less comprehensible by a complex federal bankruptcy proceeding, under Chapter X of the Federal Bankruptcy Law.

We glean from the record that Starr is a man of extensive experience in corporate affairs. For approximately nine months prior to February 26, 1971, he served as secretary and financial officer of Byrd Plastics, Inc. (Byrd), of Erie, Pennsylvania. Although the record is not quite clear on the corporate status of Byrd on February 26, 1971, it is clear that Starr held his offices in Byrd because of a transaction whereby Byrd was intended to become a wholly-owned subsidiary of Stanwood Oil Corporation (Stanwood) of the same city. Starr owned 250,000 unregistered voting shares of stock out of 6,000,000 shares of Stanwood stock. He was one of 4,300 shareholders of Stanwood. By his own testimony, Starr was chairman of the board of Stanwood and a director of Byrd. His $30,000 per year salary had been established "by the Board of Directors of the parent [Stanwood] Company," but was to be paid by Byrd. Between July of 1970 and his termination in February of 1971, Starr received approximately $22,500 in wages. Starr described some of his duties as "personnel manager, purchasing mana-

ger, plant manager, to handle the ordering of materials and personnel regarding the manufacturing and sales of the Carrousel dishwasher." He also worked on the production line during a labor dispute as a "production supervisor, assembler, . . . shipping clerk, . . . expeditor, . . . tester and inspector." He stated that as financial officer he attempted to raise money to expand the production and manufacturing operation of Byrd. He traveled extensively for Byrd to confer with "financial people." He had the authority to issue and sign checks drawn on Byrd's bank accounts. In fact, subsequent to his dismissal in 1971, he made an attempt to prove his authority, or at least test it, by actually issuing a Byrd check for $2,000, which he later repaid by direction of the trustee in bankruptcy.

The Board permitted two hearings in this matter. At the first hearing, Starr testified that he was the only supervising director of Stanwood, but he did not have total control over Byrd because of the jurisdiction of the bankruptcy trustee. He recanted that assertion at the second hearing and indicated that any control he might have exercised over Byrd was subject to the approval of its president. The record is quite clear that after Starr filed a pleading in the Bankruptcy Court, under which he proposed to oust the organizer and existing president of Byrd, his employment with Byrd was terminated.

After making application for unemployment compensation benefits, Starr's complaint was denied by the Bureau of Employment Security, the referee, and the Board. In his appeal to this Court Starr contends that he is an officer-employee of Byrd, who was discharged without cause and is entitled to unemployment compensation benefits.

Our scope of review in these cases, absent fraud, is confined to questions of law, and a determination as to

whether the Board's findings are supported by the evidence. The credibility and weight to be given evidence are questions for the Board. The party victorious below is to be given the benefit of any inferences which can reasonably and logically be drawn from the evidence. *See Greenwich v. Unemployment Compensation Board of Review*, 9 Pa. Commonwealth Ct. 520, 524, 308 A. 2d 193, 194 (1973) and *James v. Unemployment Compensation Board of Review*, 6 Pa. Commonwealth Ct. 489, 296 A. 2d 288 (1972).

In making findings based upon the record, the Board concluded that Starr was an unemployed businessman, and as such he was not eligible for benefits. We must affirm the Board. The State Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Session P. L. 2897 (1937) §402, as amended, 43 P.S. §802, in pertinent part provides: "An employee shall be ineligible for compensation for any week . . . (h) in which he is engaged in self-employment. . . ." The Superior Court interpreted this statute as follows: "The Unemployment Compensation Law was not enacted to compensate individuals who fail in their business ventures and become unemployed businessmen. . . ." *Freas Unemployment Compensation Case*, 201 Pa. Superior Ct. 150, 152, 191 A. 2d 740, 741 (1963). *Also see Dawkins Unemployment Compensation Case*, 358 Pa. 224, 56 A. 2d 254 (1948) ; *Gilbert v. Unemployment Compensation Board of Review*, 7 Pa. Commonwealth Ct. 406, 299 A. 2d 695 (1973) ; *Roccograndi Unemployment Compensation Case*, 197 Pa. Superior Ct. 372, 178 A. 2d 786 (1962).

The Pennsylvania Supreme Court had the question of eligibility of a corporate officer for unemployment compensation benefits before it in *Starinieri Unemployment Compensation Case*, 447 Pa. 256, 260, 289 A. 2d 726, 728 (1972), wherein Chief Justice JONES reviewed

the development of the law on this point, and stated the current rule: "[T]he proper test is whether the employee 'exercises a substantial degree of control over the corporation'; if so, he is a businessman and not an employee." *Starinieri* also teaches us that it is no longer necessary that the corporate officer-employee hold a majority of the stock of the corporation to be ineligible for benefits.

The record in this case contains ample evidence that Starr was in a corporate management position and was able to exercise substantial control over Byrd. He had a wide area of corporate responsibility including production, sales, marketing, financing, management and fiscal affairs. As a matter of fact, by his own testimony some question still remained even at the second hearing, some ten months after the termination of his employment, as to whether or not the president of Byrd actually had sufficient legal authority to terminate his employment. He also stated that because of the various proceedings in bankruptcy, it was conceivable that only the bankruptcy official may have had the authority to control Byrd. In any event it is quite clear that Starr was a participating party in a complex corporate arrangement whereby he at least held himself out to exert substantial control in the operation of Byrd. Our analysis of the record in this case and the applicable law permits us to conclude that Starr was indeed an unemployed businessman within the ruling of *Starinieri, supra,* and therefore not entitled to unemployment compensation benefits. *Also see Medoff v. Unemployment Compensation Board of Review,* 9 Pa. Commonwealth Ct. 466, 308 A. 2d 185 (1973); *Mandel v. Unemployment Compensation Board of Review,* 8 Pa. Commonwealth Ct. 477, 303 A. 2d 583 (1973); *Gilbert v. Unemployment Compensation Board of Review, supra.* The order of the Board is affirmed.